David N. Lake, State Bar No. 180775
**LAW OFFICES OF DAVID N. LAKE,**
  **A Professional Corporation**
16130 Ventura Boulevard, Suite 650
Encino, California 91436
Telephone: (818) 788-5100
Facsimile: (818) 479-9990
david@lakelawpc.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| MAZLIACH GAMLIEL AND PNINA GAMLIEL, INDIVIDUALLY AND AS TRUSTEES OF THE GAMLIEL FAMILY TRUST DATED JULY 31, 2008, <br><br> Plaintiffs, <br><br> vs. <br><br> STATE FARM GENERAL INSURANCE COMPANY, AN ILLINOIS CORPORATION, AND DOES 1 TO 25, INCLUSIVE <br><br> Defendants. | ) Case No. 2:21-cv-03427 MWF <br> ) (DFMx) <br> ) <br> ) (Case Assigned to Hon. Michael W. <br> ) Fitzgerald) <br> ) <br> ) **DECLARATION OF EYAL** <br> ) **GAMLIEL IN SUPPORT OF** <br> ) **PLAINTIFFS' MEMORANDUM** <br> ) **OF POINTS AND UTHORITIES** <br> ) **IN OPPOSITION TO** <br> ) **DEFENDANT'S MOTION FOR** <br> ) **SUMMARY JUDGMENT** <br> ) **AND/OR, IN THE** <br> ) **ALTERNATIVE, PARTIAL** <br> ) **SUMMARY JUDGMENT** <br> ) <br> ) Date:          March 7, 2022 <br> ) Time:          10:00 am <br> ) Courtroom.:  5A <br> ) |

I, Eyal Gamliel, declare as follows:

1.  I am over the age of eighteen and am not a party to this matter.  I have personal knowledge of the following facts and if called upon to testify under oath I would do so competently.  I submit this declaration in support of Plaintiffs' opposition to Defendant's Motion for Summary Judgment and/or, In The Alternative, Partial Summary Judgment.

2.  I am the son of Plaintiffs, Mazliach and Pnina Gamliel.  I have been serving as their representative in their present claim against State Farm since the claim was filed in July 2020.

3.  I have been a duly licensed attorney in the state of California since 1996.  I am no longer a full-time practicing attorney, but rather a real estate developer.

4.  In late June 2020, my parents were informed by letter dated June 18, 2020, from the City of Beverly Hills that there was elevated water usage at my parents' residence located at 517 Foothill Road, Beverly Hills, CA (the "Property").  This was the first notice of any elevated water use.

5.  After receiving the letter, a leaking toilet was discovered in a seldom used bathroom which appeared to be the source of the issue.  Near the very end of June, it was discovered that the toilet repair did not end the issue and so my father called Goldak, leak detection company, to locate the source of water flow.  On July 2, Goldak identified the leak as a "cold water slab leak . . . under cabinets" and they marked the area with blue tape and arrows.  Upon realizing that there was a burst pipe I contacted my parents' State Farm representative, Brittnee Lipman.

6.  Ms. Lipman advised me not to file a claim yet until the leak was located by a plumber because if the leak occurred under the concrete foundation (as opposed to inside the foundation) then there would be no coverage. The plumber (Mainline Plumbing) was immediately contacted to

locate the pipe and conduct repairs. That visit was slightly delayed a few days due to the Fourth of July holiday. Mainline Plumbing located a burst pipe in the foundation and repaired it on July 7 and 8, 2020.

7. The area of repair was in an area not normally accessible. The pipe had burst within the foundation in an area underneath large custom cabinets that existed on both sides of a wall that separates the formal dining room from a hallway. The cabinets had to be removed to access the pipe. And the wall (including custom, decorative panels) had to be broken to conduct the repair. I visited the site during the repairs. The wall and panels were rather wet as were the undersides of the marble floors in the area under the cabinets.

8. At no time did I observe any mold anywhere, including in the drywall or decorative wood panels that had to be removed. Nor did I ever observe any signs of long term water damage such as rot, fungus, spongy or soft wood, or odor. As a residential real estate developer of twenty years, I have seen and had experience with these types of issues and none was present at the Property.

9. After discovering that the burst pipe was in the foundation, not under it, I filed the claim with State Farm through our agent, Ms. Lipman on July 7. I provided her the Mainline Plumbing repair invoice which specifically said: "There was a burst pipe in the foundation." A true and correct copy of the repair invoice I provided Ms. Lipman is attached hereto as Exhibit 4. Ms. Lipman informed me that a State Farm adjuster would promptly reach out to me directly.

10. Instead, several days later a person named John Henry called my brother, Lior Gamliel (who is also but separately a State Farm insured) and left him a message. I do not know why this representative called my brother instead of me. My brother did not know what this was about and I learned

of the message a few days later.  When I called Mr. Henry back he told me he was not working on the claim and that I needed to call the main number again, which I did.

11.   I do not recall whether I got through to someone at that time or whether I received a call back but when I finally spoke with the State Farm claims representative (a female) on or about July 24, 2020, she was immediately confrontational and accusatory.  Over the last twenty five years or so I have handled dozens of insurance property claims both as a first party claimant and as an attorney; yet I have never heard this kind of tone from any insurance representative.  She accused me and my parents of unduly delaying the claim filing when all we did was first eliminate the leaky toilet and then take advice from the State Farm insurance agent to locate the source first (to make sure it was not under the foundation).  I felt that every question she was asking was intended to trip me up or get me to say something that could be used to deny coverage for the claim.  I was told the conversation was being recorded, and we have requested this recording, but State Farm has not provided it.

12.   Eventually the file made its way to Stephanie Rofail who did not visit the property, but rather did a virtual tour on July 29, 2020, and took photos while I conducted a video chat with her.  This entire tour of the house lasted about fifteen minutes to the best of my estimation and at the end of it Ms. Rofail already verbally denied coverage.  Ms. Rofail never asked me to see the pipe in question to check if it was deteriorated or to see the size of the hole.  I did see the hole in the pipe.  From my experience in handling property claims I am familiar with the term "pinhole" which is typically used by insurance companies to deny coverage based on a tiny hole that sprays small amounts of water over a long period of time.  I have dealt with pinhole

leaks for years both as an attorney and as a real estate developer. This hole was far larger than that; this was not a pinhole leak.

13. I informed Ms. Rofail that the floors were damaged and the wall paneling was wet.

14. I informed Ms. Rofail that the broken pipe was in the foundation, not under it.

15. I did mention to Ms. Rofail that my parents and I noticed loose marble tiles but this was in hindsight, meaning it was not something that caused us concern until we found out about the burst pipe. To the best of my recollection, the loose tiles were noticed around the end of June. Additionally, for clarification, the loose tiles were not located where the pipe burst. Rather, the loose tiles were in a nearby hallway, under an area rug and since the marble tiles are the original flooring from 1987 there are and have occasionally been other loose tiles in the house in areas nowhere near the location of the burst pipe.

16. I did mention to Ms. Rofail that I believed there was an unusual, elevated water usage for a month and a half, which was based on the graphs provided by the City of Beverly Hills. But I have no way of knowing whether that is attributable solely to the leaky toilet or the burst pipe, or both.

17. State Farm's first denial letter dated July 30, 2020, stated that the pipe was located "under the slab of your home." I have attached hereto, as Exhibit 5, a true and correct copy of the July 30, 2020, letter. I was very surprised to read this given that State Farm had been told multiple times verbally and in writing that the pipe was actually in the foundation itself.

18. After receiving the denial letter which misstated the location of the pipe, I called the owner of the State Farm agency and Ms. Lipman's employer, Mike Fiscus. Mr. Fiscus inquired with State Farm's "upper

management" and informed me that the claim was denied for two reasons: 1) the pipe was in the foundation, and 2) there was no property damage. Again, I was very surprised to hear this because neither statement was true and State Farm had the contrary information already in its possession. After again providing evidence to Mr. Fiscus that the pipe was in the foundation (see Ranelle Anogra Decl., Exhibit 1) and that there was property damage, he attempted to revive the claim but then State Farm denied it based on alleged deterioration of the pipe and the leak being continuous. I have attached hereto, as Exhibit 6, a true and correct copy of the August 24, 2020, denial letter.

19.    Defendant did not have any photographs of the pipe prior to its initial denial of the claim. Nor did Defendant even request a photograph of the pipe prior to the denial of the claim. I arranged for a photograph of the location of the pipe to be sent to Defendant because Defendant had denied the claim based on mislocating the pipe as being under instead of within the foundation, something it did despite my telling it clearly that the pipe was within the foundation.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 14, 2022, at Los Angeles, California.

Eyal Gamliel

# PROOF OF SERVICE
## STATE OF CALIFORNIA , COUNTY OF LOS ANGELES

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of . My business address is 16130 Ventura Blvd., Suite 650, Encino, CA 91436.

On February 14, 2022, I served true copies of the following document(s) described as **DECLARATION OF EYAL GAMLIEL IN SUPPORT OF PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND/OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** on the interested parties in this action as follows:

Steven J. Elie, Esq.
Laura K. Kim, Esq.
MUSICK, PEELER & GARRETT LLP
624 South Grand Avenue, Suite 2000
Los Angeles, California 90017-3383
Telephone (213) 629-7600
Facsimile (213) 624-1376
  s.elie@musickpeeler.com
  l.kim@musickpeeler.com
(Counsel for Defendant)

**BY EMAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from email address david@lakelawpc.com to counsel at the email address shown above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 14, 2022, at Encino, California.

_____
David N. Lake